UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X
SAMANTHA PEZZOLANTI,

                            *Plaintiff,*

   -against-

EXTENSIS GROUP, LLC,

                            *Defendant.*
-----------------------------------------------------------------------------X

**Docket No.:**

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Plaintiff Samantha Pezzolanti, as and for her Complaint, all upon information and belief, respectfully alleges as follows:

**JURISDICTION AND VENUE**

1.      This Court has original jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. §1332, in that Plaintiff's claims exceed the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

2.      Specifically, Plaintiff is a resident and citizen of the State and City of New York, County of Richmond, and Defendant is a corporation that is registered in New Jersey maintains its principal place of business at 900 Route 9 North, Woodbridge, New Jersey 07095, so that Defendant is a citizen of New Jersey.

3.      This Court has personal jurisdiction over Defendant because it maintains an office in the County, City and State of New York, as it indicates on its website (https://extensishr.com/contact/), and transacts business within the State of New York.

4.      Venue is proper under 28 U.S.C §1391(b)(2) because a substantial part of the events giving rise to this claim occurred within the Eastern District of New York, as the Plaintiff worked remotely for Defendant at her home in this District.

## IDENTITY OF THE PARTIES

5.      At all relevant times mentioned herein, Plaintiff Samantha Pezzolanti was employed by Defendant Extensis Group, LLC from May 16, 2022 until she was forced out of her position due to gender discrimination on December 22, 2022.

6.      Defendant Extensis Group, LLC ("Extensis") is a human resource outsourcing ("HRO") and professional employer organization ("PEO") company that provides human resource solutions to businesses.

## BACKGROUND RELEVANT TO ALL CAUSES OF ACTION

7.      Pezzolanti joined Extensis on May 16, 2022 as a Key Account Manager, reporting to Joseph Lambert ("Lambert"), VP of Client Success.

8.      At all relevant times, Pezzolanti was qualified for her employment with Extensis.

9.      Pezzolanti was excited about the role because it was a better opportunity than the position she previously held and offered a higher salary and a flexible schedule, which was important to her as a single mother to a minor child.

10.      Pezzolanti regularly worked in New York City, which included working remotely from her home in Staten Island at least two days per week, as well as working with several of her clients who were also based in New York City.

11.      Pezzolanti generally started work at 8:00 am or earlier and was required to leave the office at approximately 5:00 pm each day so that she could be home to care for her then-13-

year-old daughter, for whom Pezzolanti was a single mother, though Pezzolanti often continued worked from home in the evenings.

12. After leaving the office several times at 5:00 pm in May 2022, Lambert approached Pezzolanti and stated that she had to stay at work until 5:30-6:00 pm each day because the team needed to "huddle" or "recap" the day.

13. Pezzolanti explained that it would be difficult for her to do that every day because of her childcare responsibilities, as Pezzolanti had to leave work at approximately 5:00 pm to take care of her daughter after she arrived home from school and after-school activities and/or care.

14. Lambert was visibly annoyed by Pezzolanti's childcare responsibilities and sighed and pursed his lips.

15. Pezzolanti observed that Lambert had a similar reaction to the fact that her colleague, Kate, had similar childcare responsibilities.

16. Pezzolanti continued to work hard, but felt extreme hostility from Lambert every time she had to leave at 5:00 pm, even though Pezzolanti always completed her assignments.

17. On December 15, 2022, Lambert called Pezzolanti into Lambert's office for what she thought would be a "touch base."

18. Instead, Lambert told Pezzolanti that her performance on a new client was "lacking," even though the only feedback he had he provided to her was related to her schedule and staying late at work, rather than her work performance.

19. During this meeting, Lambert said to Pezzolanti, **"Your daughter is 13"** and that Pezzolanti needed to **"let her figure it out on her own sometimes."**

20. Pezzolanti explained that she was not comfortable letting her 13-year-old daughter walk home alone from her after school activities.

21.    Lambert responded by blaming denigrating where Pezzolanti lived, saying, "Perhaps where you are living is not the best area for you to live in if you do not feel she could navigate the area alone," essentially tell Pezzolanti that she should (a) relocate her home and (b) permit her young daughter to walk home alone so that she could satisfy Lambert's desire that she stay an extra 30-60 minutes at work each day.

22.    Lambert then said that in order to have a successful career, Pezzolanti needed to be willing to "make sacrifices" and "give up time in my personal life."

23.    Lambert was clearly telling Pezzolanti that her responsibilities as a mother and caregiver for her daughter would impact her employment at Extensis, and that that she needed to choose between those responsibilities and her job, even though Pezzolanti had always fulfilled the responsibilities of her position in addition to taking care of her daughter.

24.    Lambert ended the conversation by threatening that Pezzolanti needed to decide if this role is one she wanted, or that maybe she wanted a lesser role.

25.    Pezzolanti left the conversation visibly upset and shaking and broke down in tears when she got to her car.

26.    Six days later, on December 21, 2022, at around 4:45 pm, Lambert assigned Pezzolanti the task of redesigning a client resource guide with her teammate, Alexandra Ruta ("Ruta").

27.    Lambert assigned her this task at 4:45 pm knowing full well that Pezzolanti had to leave just 15 minutes later to take care of her daughter, as they had discussed Pezzolanti's childcare responsibilities less than one week earlier.

28.    Pezzolanti worked on the project until about 5:15 pm and then had to leave to pick up her daughter.

29.     Pezzolanti told Ruta and Lambert that she would pick up the task first thing the next morning.

30.     When Pezzolanti arrived at work the next morning, December 22, 2022, she continued to work on the project.

31.     When it was completed, Pezzolanti sent it to Lambert.

32.     Lambert responded by telling Pezzolanti that the work had already been completed by Ruta, who stayed late to finish it.

33.     Lambert reprimanded Pezzolanti, stating that this type of "lapse" or "service break" would not be acceptable.

34.     There had been no lapse in service to any client or the company, as Pezzolanti had been assigned the project near the close of business at 4:45 pm and she completed it the next morning.

35.     Lambert targeted Pezzolanti because her childcare obligations did not allow her to stay in the office past standard working hours, and made Pezzolanti feel shame because of her familial status, despite the fact that Pezzolanti continued to perform her duties at the highest level.

36.     Lambert's refusal to accept or accommodate Pezzolanti's parental obligations made it impossible to continue her position, as Lambert's hostility toward Pezzolanti because she had to leave at the end of the normal workday was clearly not going to abate and she could not sacrifice her daughter just to please him.

37.     Pezzolanti spoke to Niki Martin, Vice President of Human Resources, and told her that Lambert had made it impossible for her to continue in her role.

38.     Incredibly, Martin responded, "I just want to clarify this is another Joe Lambert issue," acknowledging that Extensis was aware of Lambert's improper behavior and permitted it. causing Pezzolanti to understand that there had been prior complaints about him.

39.     Pezzolanti also spoke with David Pearson ("Pearson"), Head of People, about her experience working with Lambert, but nothing was done to address it.

40.     Extensis refused to take any action in response to Pezzolanti's complaint that Lambert had refused to accommodate her caregiver responsibilities, thereby condoning and ratifying both Lambert's discriminatory actions and Pezzolanti's constructive discharge.

41.     Pezzolanti was constructively discharged by Extensis on December 22, 2022.

42.     As a result of Extensis' discriminatory conduct, Pezzolanti has suffered the adverse effects of discrimination, which includes damages to the quality of her life, her self-esteem, self-respect and financial and emotional well-being because she was subjected to the humiliating and demeaning type of conduct described herein, all of which will continue and remain a source of humiliation, distress and financial loss to Pezzolanti into the future.

43.     Here, Extensis' conduct towards Pezzolanti shows that it acted with willful or wanton negligence, malice, recklessness, or a conscious disregard of Pezzolanti's rights, or that its unlawful actions against Pezzolanti were so reckless as to amount to a disregard of Pezzolanti's rights, so that in addition to all the damages inflicted upon Pezzolanti and in addition to all the measure of relief to which she may properly be entitled herein, Extensis should also be required to pay punitive damages as punishment for its discriminatory conduct in order to deter it and others similarly situated from engaging in such conduct in the future.

**AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF
OF PEZZOLANTI AGAINST EXTENSIS FOR GENDER
DISCRIMINATION IN VIOLATION OF §8-107(1)(a)
OF THE NEW YORK CITY HUMAN RIGHTS LAW**

44.     Pezzolanti repeats, re-alleges and incorporates in full paragraphs 1 through 43 of this Complaint as though fully set forth at length herein.

45.     At the time that Pezzolanti was subjected to the discriminatory conduct described herein, she was in a protected class under the New York City Human Rights Law because of her gender.

46.     Throughout the time of her employment with Extensis, Pezzolanti was fully qualified for her position and was in a position to continue working in that capacity.

47.     Extensis treated Pezzolanti less well because of her gender, which culminated in Pezzolanti's constructive discharge on December 22, 2022.

48.     Given Extensis' expressed animus against Pezzolanti as a mother, including his visible annoyance at Pezzolanti's need to leave work at the end of the work day to take care of her minor daughter, and his degrading remarks that Pezzolanti needed to "make sacrifices" and "give up time in her personal life" for her position, regardless of the fact that Pezzolanti was fully capable of fulfilling her duties without an accommodation, gives rise to a very real inference that the actual basis for Extensis' conduct against Pezzolanti was her gender.

49.     The aforementioned acts of Extensis constitute unlawful discrimination against Pezzolanti in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, §8-107(1)(a) ("The New York City Human Rights Law"), which provides, *inter alia* that:

> It shall be unlawful discriminatory practice . . .[f]or an employer or
> an employee or agent thereof, because of the actual or perceived . .
> . gender. . . of any person . . . to discharge from employment such

person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

50.     As a result of Extensis' violations of the New York City Human Rights Law §8-107(1)(a), it is liable to Pezzolanti pursuant §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

51.     As a result of Extensis' discriminatory conduct, Pezzolanti has suffered actual and prospective financial loss, which Pezzolanti alleges to be in the amount of Two Million Dollars ($2,000,000).

52.     Here, Extensis' conduct toward Pezzolanti shows that it acted with willful or wanton negligence, or recklessness, or a conscious disregard of Pezzolanti's rights under the New York City Human Rights Law, or that its unlawful actions against Pezzolanti were so reckless as to amount to a disregard of Pezzolanti's rights, so that in addition to the actual and prospective financial loss suffered by Pezzolanti, Extensis should also be required to pay punitive damages as punishment for its reprehensible conduct in the further amount of Three Million Dollars ($3,000,000) in order to deter Extensis and others similarly situated from such conduct in the future.

53.     Pezzolanti, therefore, seeks compensatory damages on this First Cause of Action, including, among other things, the emotional harm inflicted upon her in the sum of Two Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000) Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in this Cause of Action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

**AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF**
**OF PEZZOLANTI AGAINST EXTENSIS FOR CAREGIVER**
**STATUS DISCRIMINATION IN VIOLATION OF §8-107(1)(a)**
**OF THE NEW YORK CITY HUMAN RIGHTS LAW**

54. Pezzolanti repeats, re-alleges and incorporates in full paragraphs 1 through 53 of this Complaint as though fully set forth at length herein.

55. At the time that Pezzolanti was subjected to the discriminatory conduct described herein, she was in a protected class under the New York City Human Rights Law because she was a caregiver to her minor child, which the City Law defines as " a person who provides direct and ongoing care for a minor child or a care recipient." Administrative Code §8-102.

56. Throughout the time of her employment with Extensis, Pezzolanti was fully qualified for her position and was in a position to continue working in that capacity.

57. Extensis treated Pezzolanti less well because of her caregiver status, which culminated in Pezzolanti's constructive discharge on December 22, 2022.

58. Given Extensis' expressed animus against Pezzolanti as a caregiver, Given Extensis' expressed animus against Pezzolanti as a mother, including his visible annoyance at Pezzolanti's need to leave work at the end of the work day to take care of her minor daughter, and his degrading remarks that Pezzolanti needed to "make sacrifices" and "give up time in her personal life" for her position, regardless of the fact that Pezzolanti was fully capable of fulfilling her duties without an accommodation, gives rise to a very real inference that the actual basis for Extensis' conduct against Pezzolanti was her status as a caregiver.

59. The aforementioned acts of Extensis constitute unlawful discrimination against Pezzolanti in violation of §8-107(1)(a) of the New York City Human Rights Law, which provides, *inter alia* that:

> It shall be unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the actual or perceived . . . caregiver status. . . of any person . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

60. As a result of Extensis' violations of the New York City Human Rights Law §8-107(1)(a), it is liable to Pezzolanti pursuant §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

61. As a result of Extensis' discriminatory conduct, Pezzolanti has suffered actual and prospective financial loss, which Pezzolanti alleges to be in the amount of Two Million Dollars ($2,000,000).

62. Here, Extensis' conduct toward Pezzolanti shows that it acted with willful or wanton negligence, or recklessness, or a conscious disregard of Pezzolanti's rights under the New York City Human Rights Law, or that its unlawful actions against Pezzolanti were so reckless as to amount to a disregard of Pezzolanti's rights, so that in addition to the actual and prospective financial loss suffered by Pezzolanti, Extensis should also be required to pay punitive damages as punishment for its reprehensible conduct in the further amount of Three Million Dollars ($3,000,000) in order to deter Extensis and others similarly situated from such conduct in the future.

63. Pezzolanti, therefore, seeks compensatory damages on this Second Cause of Action, including, among other things, the emotional harm inflicted upon her in the sum of Two Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000)

Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in this Cause of Action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

**AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF PEZZOLANTI AGAINST EXTENSIS FOR SEX DISCRIMINATION IN VIOLATION OF CHAPTER 18, ARTICLE <u>15 OF THE NEW YORK STATE EXECUTIVE LAW §296(1)(a)</u>**

64.    Pezzolanti repeats, re-alleges and incorporates in full paragraphs 1 through 63 of this Complaint as though fully set forth at length herein.

65.    At the time that Pezzolanti was subjected to the discriminatory conduct described herein, she was in a protected class under the New York State Human Rights Law because of her sex.

66.    Throughout the time of her employment with Extensis, Pezzolanti was fully qualified for her position and was in a position to continue working in that capacity.

67.    Extensis treated Pezzolanti less well because of her gender, which culminated in Pezzolanti's constructive discharge on December 22, 2022.

68.    Given Extensis' expressed animus against Pezzolanti as a mother, including his visible annoyance at Pezzolanti's need to leave work at the end of the work day to take care of her minor daughter, and his degrading remarks that Pezzolanti needed to "make sacrifices" and "give up time in her personal life" for her position, regardless of the fact that Pezzolanti was fully capable of fulfilling her duties without an accommodation, gives rise to a very real inference that the actual basis for Extensis' conduct against Pezzolanti was her sex.

69.    The aforementioned acts of Extensis constitute unlawful discrimination against Pezzolanti in violation of Chapter 18, Article 15 of the New York State Executive Law §296(1)(a) ("the New York State Human Rights Law"), which provides, inter alia, that:

It shall be an unlawful discriminatory practice: (a) For an employer . . . because of the . . . sex . . . of any individual . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

70. As a direct and proximate result of Extensis' violation of the New York State Human Rights Law §296(1)(a), Pezzolanti was adversely affected in her employment, and did and continues to suffer in her life's normal pursuits, and she believes that the injuries inflicted upon her as a result of Extensis' discriminatory conduct did and will continue to have a detrimental effect upon the quality of her life and career, and will prevent her from functioning as she did prior to the conduct complained of herein, all of which Pezzolanti alleges to be in the amount of Two Million Dollars ($2,000,000).

71. Here, Extensis' conduct toward Pezzolanti shows that it acted with willful or wanton negligence, or recklessness, or a conscious disregard of Pezzolanti's rights under the New York State Human Rights Law, or that its unlawful actions against Pezzolanti were so reckless as to amount to a disregard of Pezzolanti's rights, so that in addition to the actual and prospective financial loss suffered by Pezzolanti, Extensis should also be required to pay punitive damages as punishment for its reprehensible conduct in the further amount of Three Million Dollars ($3,000,000) in order to deter Extensis and others similarly situated from such conduct in the future.

72. Pezzolanti, therefore, seeks compensatory damages on this Third Cause of Action, including, among other things, the emotional harm inflicted upon her in the sum of Two Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000) Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in this Cause of Action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

**AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF
OF PEZZOLANTI AGAINST EXTENSIS FOR FAMILIAL STATUS
DISCRIMINATION IN VIOLATION OF CHAPTER 18, ARTICLE
<u>15 OF THE NEW YORK STATE EXECUTIVE LAW §296(1)(a)</u>**

73.     Pezzolanti repeats, re-alleges and incorporates in full paragraphs 1 through 72 of this Complaint as though fully set forth at length herein.

74.     At the time that Pezzolanti was subjected to the discriminatory conduct described herein, she was in a protected class under the New York State Human Rights Law because of her familial status, which the New York State Human Rights Law defines as "any person who is pregnant or has a child…" Executive Law §292(26)(a)

75.     Throughout the time of her employment with Extensis, Pezzolanti was fully qualified for her position and was in a position to continue working in that capacity.

76.     Extensis treated Pezzolanti less well because of her familial status, which culminated in Pezzolanti's constructive discharge on December 22, 2022.

77.     Given Extensis' expressed animus against Pezzolanti as a mother, including his visible annoyance at Pezzolanti's need to leave work at the end of the work day to take care of her minor daughter, and his degrading remarks that Pezzolanti needed to "make sacrifices" and "give up time in her personal life" for her position, regardless of the fact that Pezzolanti was fully capable of fulfilling her duties without an accommodation, gives rise to a very real inference that the actual basis for Extensis' conduct against Pezzolanti was her familial status.

78.     The aforementioned acts of Extensis constitute unlawful discrimination against Pezzolanti in violation of §296(1)(a) pf the New York State Human Rights Law, which provides, inter alia, that:

> It shall be an unlawful discriminatory practice: (a) For an employer
> . . . because of the . . . familial status . . . of any individual . . . to

discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

79.    As a direct and proximate result of Extensis' violation of the New York State Human Rights Law §296(1)(a), Pezzolanti was adversely affected in her employment, and did and continues to suffer in her life's normal pursuits, and she believes that the injuries inflicted upon her as a result of Extensis' discriminatory conduct did and will continue to have a detrimental effect upon the quality of her life and career, and will prevent her from functioning as she did prior to the conduct complained of herein, all of which Pezzolanti alleges to be in the amount of Two Million Dollars ($2,000,000).

80.    Here, Extensis' conduct toward Pezzolanti shows that it acted with willful or wanton negligence, or recklessness, or a conscious disregard of Pezzolanti's rights under the New York State Human Rights Law, or that its unlawful actions against Pezzolanti were so reckless as to amount to a disregard of Pezzolanti's rights, so that in addition to the actual and prospective financial loss suffered by Pezzolanti, Extensis should also be required to pay punitive damages as punishment for its reprehensible conduct in the further amount of Three Million Dollars ($3,000,000) in order to deter Extensis and others similarly situated from such conduct in the future.

81.    Pezzolanti, therefore, seeks compensatory damages on this Fourth Cause of Action, including, among other things, the emotional harm inflicted upon her in the sum of Two Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000) Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in this Cause of Action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

**AS FOR A FIFTH CAUSE OF ACTION, IN THE ALTERNATIVE,
ON BEHALF OF PEZZOLANTI AGAINST EXTENSIS FOR
GENDER DISCRIMINATION IN VIOLATION OF §10:5-12(a)
OF THE NEW JERSEY LAW AGAINST DISCRIMINATION**

82.    Pezzolanti repeats, re-alleges and incorporates in full paragraphs 1 through 81 of this Complaint as though fully set forth at length herein.

83.    Should the Court determine that it does not have jurisdiction under the New York City or State Human Rights Laws, Pezzolanti asserts claims under the New Jersey Law Against Discrimination.

84.    At the time that Pezzolanti was subjected to the discriminatory conduct described herein, she was in a protected class under the New Jersey Law Against Discrimination because of her sex.

85.    Throughout the time of her employment with Extensis, Pezzolanti was fully qualified for her position and was in a position to continue working in that capacity.

86.    Extensis discriminated against Pezzolanti because of her sex, which culminated in Pezzolanti's constructive discharge on December 22, 2022.

87.    Given Extensis' expressed animus against Pezzolanti as a mother, including his visible annoyance at Pezzolanti's need to leave work at the end of the work day to take care of her minor daughter, and his degrading remarks that Pezzolanti needed to "make sacrifices" and "give up time in her personal life" for her position, regardless of the fact that Pezzolanti was fully capable of fulfilling her duties without an accommodation, gives rise to a very real inference that the actual basis for Extensis' conduct against Pezzolanti was her sex.

88.     The aforementioned acts of Extensis constitute unlawful sex discrimination against Pezzolanti in violation of N.J. Stat. §10:5-12(a) (referred to herein as "the New Jersey Law Against Discrimination"), which *inter alia*, states that:

> It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination . . . [f]or an employer, because of the . . . sex . . . of any individual . . . to refuse to hire or employ or to bar or to discharge . . . from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

89.     As a result of Extensis' violation of the New Jersey Law Against Discrimination, Extensis is liable to Pezzolanti pursuant to §10:5-13 of said statute for "all remedies available in common law tort actions," which includes punitive damages, and pursuant to §10:5-27.1 of said statute for "reasonable attorney's fee[s]" as judicially established and accepted when attorney's fees are provided under the law.

90.     As a proximate result of Extensis' conduct, Pezzolanti has been adversely affected in her employment, her well-being, in the quality of her life and in her normal life's pursuits, and Pezzolanti believes that Extensis' conduct complained of herein has and will continue to have a devastating effect upon her life, all of which Pezzolanti alleges to be in the amount of Two Million Dollars ($2,000,000).

91.     Here, Extensis exhibited wanton or reckless conduct in flagrant violation of Pezzolanti's protected rights so that in addition to all the measure of relief to which Pezzolanti may properly be entitled herein, Extensis should also be required to pay punitive damages as punishment for its reprehensible conduct in the further amount of Three Million Dollars ($3,000,000) in order to deter Extensis and others similarly situated from such conduct in the future.

92. Pezzolanti, therefore, seeks judgment in the alternative against Extensis Partners on this Fifth Cause of Action, including, among other things, for compensatory damages in the sum of Two Million Dollars ($2,000,000), and the additional further sum of Three Million Dollars ($3,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees on this Cause of Action, making a total of Five Million Dollars ($5,000,000).

**AS FOR A SIXTH CAUSE OF ACTION, IN THE ALTERNATIVE,**
**ON BEHALF OF PEZZOLANTI AGAINST EXTENSIS FOR**
**FAMILIAL STATUS IN VIOLATION OF §10:5-4 OF**
**THE NEW JERSEY LAW AGAINST DISCRIMINATION**

93. Pezzolanti repeats, re-alleges and incorporates in full paragraphs 1 through 92 of this Complaint as though fully set forth at length herein.

94. Should the Court determine that it does not have jurisdiction under the New York City or State Human Rights Laws, Pezzolanti asserts claims under the New Jersey Law Against Discrimination.

95. At the time that Pezzolanti was subjected to the discriminatory conduct described herein, she was in a protected class under the New Jersey Law Against Discrimination because of her familial status.

96. Throughout the time of her employment with Extensis, Pezzolanti was fully qualified for her position and was in a position to continue working in that capacity.

97. Extensis discriminated against Pezzolanti because of her familial status, which culminated in Pezzolanti's constructive discharge on December 22, 2022.

98. Given Extensis' expressed animus against Pezzolanti as a mother, including his visible annoyance at Pezzolanti's need to leave work at the end of the work day to take care of her minor daughter, and his degrading remarks that Pezzolanti needed to "make sacrifices" and "give

up time in her personal life" for her position, regardless of the fact that Pezzolanti was fully capable of fulfilling her duties without an accommodation, gives rise to a very real inference that the actual basis for Extensis' conduct against Pezzolanti was her familial status.

99.    The aforementioned acts of Extensis constitute unlawful familial status discrimination against Pezzolanti in violation of N.J. Stat. §10:5-4, which *inter alia*, states that:

> All persons shall have the opportunity to obtain employment . . . without discrimination because of . . . familial status . . . This opportunity is recognized as and declared to be a civil right.

100.    As a result of Extensis' violation of the New Jersey Law Against Discrimination, Extensis is liable to Pezzolanti pursuant to §10:5-13 of said statute for "all remedies available in common law tort actions," which includes punitive damages, and pursuant to §10:5-27.1 of said statute for "reasonable attorney's fee[s]" as judicially established and accepted when attorney's fees are provided under the law.

101.    As a proximate result of Extensis' conduct, Pezzolanti has been adversely affected in her employment, her well-being, in the quality of her life and in her normal life's pursuits, and Pezzolanti believes that Extensis' conduct complained of herein has and will continue to have a devastating effect upon her life, all of which Pezzolanti alleges to be in the amount of Two Million Dollars ($2,000,000).

102.    Here, Extensis exhibited wanton or reckless conduct in flagrant violation of Pezzolanti's protected rights so that in addition to all the measure of relief to which Pezzolanti may properly be entitled herein, Extensis should also be required to pay punitive damages as punishment for its reprehensible conduct in the further amount of Three Million Dollars

($3,000,000) in order to deter Extensis and others similarly situated from such conduct in the future.

103.    Pezzolanti, therefore, seeks judgment in the alternative against Extensis Partners on this Fifth Cause of Action, including, among other things, for compensatory damages in the sum of Two Million Dollars ($2,000,000), and the additional further sum of Three Million Dollars ($3,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees on this Cause of Action, making a total of Five Million Dollars ($5,000,000).

## JURY DEMAND

Plaintiff hereby demands a jury trial.

**WHEREFORE**, Plaintiff Samantha Pezzolanti demands judgment against Defendant Extensis Group, LLC on each of the Causes of Action in an amount in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the further and additional sum of Three Million Dollars ($3,000,000) in punitive damages, plus, for all Causes of Action, plus pre-judgment interest, the costs of this action and reasonable attorney's fees; and for such relief as this Court deems just and proper.

**SCHWARTZ PERRY & HELLER, LLP**
*Attorneys for Plaintiff*

By: _____
DAVIDA S. PERRY
BRIAN HELLER
3 Park Avenue, Suite 2700
New York, NY 10016
(212) 889-6565