UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
SAMANTHA PEZZOLANTI,                           :
                                                                        :         DECISION & ORDER
                                        Plaintiff,           :
                                                                        :         23-CV-7276 (RER)(PK)
                -against-                                    :
                                                                        :
EXTENSIS GROUP LLC,                              :
                                                                        :
                                        Defendant.      :
-------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

Samantha Pezzolanti ("Plaintiff") brought this action in the Eastern District of New York against Exensis Group, LLC ("Defendant") for discrimination on the basis of gender. Plaintiff brings claims under the New York City Human Rights Law ("NYCHRL") and the New York State Human Rights Law ("NYSHRL"), or, in the alternative, the New Jersey Law Against Discrimination. ("Compl.," Dkt. 1.)

On June 7, 2024, Defendant moved to transfer this matter to the District of New Jersey pursuant to 28 U.S.C. § 1404(a) ("Motion," Dkt. 24; *see also* "Def. Mem.," Dkt. 25; "Pl. Mem.," Dkt. 26; "Reply," Dkt. 27.)

## FACTUAL BACKGROUND

Unless otherwise noted, the following facts are taken from the Complaint and assumed to be true for the purposes of this Motion.

Plaintiff resides in Richmond County, Staten Island, New York (Compl. ¶ 2), and at all relevant times was employed by Defendant. (*Id.* ¶ 5.) Defendant is a limited liability company whose principal place of business is in New Jersey, but it also maintains an office and transacts business in New York. (*Id.* ¶¶ 2-3.) Defendant has clients in both New York and New Jersey. (Pl. Mem. at 6.)

Plaintiff began working for Defendant on May 16, 2022. (*Id.* ¶ 5.) She alleges that she was forced out of her position due to discrimination on December 22, 2022. (*Id.*)

Plaintiff worked for Defendant as a "Key Account Manager" and reported to Joseph Lambert ("Lambert"), the VP of Client Success. (*Id.* ¶ 7.) She worked remotely from her home in Staten Island at least two days a week and worked with several clients based in New York City. (*Id.* ¶ 10.) Plaintiff visited clients in New York with Lambert and took part in virtual calls with Lambert from her home in New York. (Pl. Mem. at 14-15.)

Plaintiff was hired as a hybrid employee who worked three days a week in Defendant's New Jersey office and two days a week from her home in Staten Island, New York. (*Id.* at 2.) Plaintiff generally started work at 8:00 a.m. or earlier and had to leave the office at approximately 5:00 p.m. each day for purposes of caring for her 13-year-old daughter, after which she often continued to work from home. (Compl. ¶ 11.) In May 2022, Lambert approached Plaintiff and told her that she had to stay until 5:30-6:00 p.m. each day because the whole team "needed to 'huddle' or 'recap' the day." (*Id.* ¶ 12.) When Plaintiff explained that it would be difficult for her to do that every day because of her childcare responsibilities, Lambert "was visibly annoyed." (*Id.* ¶¶ 13-14.) Plaintiff felt "extreme hostility" from Lambert every time she had to leave the office at 5:00 p.m. (*Id.* ¶ 16.)

On December 15, 2022, Lambert called Plaintiff into his office and told her that her performance for a new client was "lacking," even though the only feedback he provided to her was related to her schedule, not her job performance. (*Id.* ¶¶ 17-18.) During this meeting, Lambert also made comments about whether Plaintiff actually needed to leave early to take care of a thirteen-year-old. (*Id.* ¶¶ 19-21.) After telling Plaintiff that she needed to be willing to "make sacrifices" and "give up time in [her] personal life," he noted that she needed to decide if she wanted this role or wanted a lesser role instead. (*Id.* ¶¶ 22-24.) Plaintiff left the conversation upset and broke down in tears. (*Id.* ¶ 25.)

On December 21, 2022, Lambert assigned Plaintiff and her teammate Alexandra Ruta ("Ruta") a task at around 4:45 p.m., knowing that Plaintiff had to leave at 5:00 p.m.; Plaintiff worked on the task until 5:15 p.m. and then left to pick up her daughter, telling Lambert and Ruta that she would resume the work first thing the next morning. (*Id.* ¶¶ 26-29.) The next morning, Plaintiff finished the task and sent it to Lambert, who informed her that Ruta had already stayed late to finish the task and that her "lapse" or "service break" in not finishing until the morning was not acceptable. (*Id.* ¶¶ 30-33.)

Plaintiff contends that Lambert's refusal to accept or accommodate her parental obligations, along with his hostility toward her 5:00 p.m. departures, made it impossible for her to continue in her position. (*Id.* ¶¶ 36.) When Plaintiff told Defendant's Human Resources staff that Lambert was making it impossible for her to continue in her role, they responded that "this is [just] another Joe Lambert issue" and took no action to address Plaintiff's concerns. (*Id.* ¶¶ 37-40.) Because of Defendant's refusal to take any action in response to her complaint that Lambert had refused to accommodate her caregiver responsibilities, Plaintiff contends that she was constructively discharged on December 22, 2022. (*Id.* ¶ 41.)

Plaintiff does not dispute that each of the specific interactions with Lambert she described in the Complaint, as well as Plaintiff's meetings with Defendant's HR staff regarding Lambert's conduct, occurred in Defendant's New Jersey office. (Def. Mem. at 6, 10.)

## DISCUSSION

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "In any motion to change venue, the movant bears the burden of establishing the propriety of transfer by clear and convincing evidence." *Payless Shoesource, Inc. v. Avalon Funding Corp.*, 666 F. Supp. 2d 356, 362 (E.D.N.Y. 2009). While courts have the discretion to grant a motion to transfer

3

venue, courts in this Circuit "have consistently applied the clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion." *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010); *see also Christina Canada, Inc. v. Wior Corp.*, 702 F. Supp. 461, 463 (S.D.N.Y. 1988) ("[A]bsent a clear and convincing showing that the balance of convenience favors the ultimate forum, discretionary transfers are not favored." (internal quotation marks omitted)).

"The inquiry on a motion to transfer is two-fold. The court must first determine whether the action sought to be transferred is one that 'might have been brought' in the transferee court. Second, the court must determine whether, considering 'the convenience of parties and witnesses' and 'the interest of justice,' a transfer is appropriate." *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998).

I. **Whether Action Might Have Been Brought in District of New Jersey**

"A case might have been brought in another forum if 'at the time the suit was brought, the defendants were subject to jurisdiction and venue was proper' in that district." *Smart Skins LLC v. Microsoft Corp.*, No. 14-CV-10149 (CM), 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015) (quoting *Giuliani, S.p.A. v. Vickers, Inc.*, 997 F. Supp. 501, 502 (S.D.N.Y. 1998)).

Here, the parties do not dispute that that this action could have been brought in the District of New Jersey. Defendant is a limited liability company registered to do business in New Jersey with its principal place of business in New Jersey. (Def. Mem. at 3.) Accordingly, this action could have been brought in the proposed transferee district.

II. **"Convenience" and "Interest of Justice" Considerations**

Factors which courts commonly consider in a motion to transfer venue include "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative

4

facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006) (quoting *Albert Fadem Tr. v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002), which references the following additional factors: "(8) the forum's familiarity with the governing law, and (9) trial efficiency and the interests of justice, based on the totality of the circumstances"). "There is no strict formula for the application of these factors, and no single factor is determinative." *Sarracco v. Ocwen Loan Servicing, LLC*, 220 F. Supp. 3d 346, 356 (E.D.N.Y. 2016). "Instead, these factors should be applied and weighed in the context of the individualized circumstances of the particular case." *Id.*

"In seeking to meet [its] burden that clear and convincing evidence calls for transfer, [defendant] must establish that at least one of the factors weighs in favor of transfer, and that any factors weighing in favor of transfer outweigh any factors weighing against it. If all the factors are neutral, the transfer motion should be denied." *In re Peloton Interactive, Inc. Sec. Litig.*, No. 21-CV-2369 (CBA)(PK), 2022 WL 1211516, at *2 (E.D.N.Y. Jan. 26, 2022).

Here, I find that the locus of operative facts weighs strongly in favor of transfer.

"To determine where the locus of operative facts lies, courts look to 'the site of events from which the claim arises.'" *Id.* (quoting *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 134 (S.D.N.Y. 1994)).

Plaintiff argues that she lived in New York; worked from home two days a week (and nights); visited clients exclusively in New York, where most of her clients were also located, including with Lambert; participated in Zoom calls with Lambert from home; and due to Defendant's and Lambert's actions, had to find a new job, downsize, and move while within New York. (Pl. Mem. at 2, 10-11.) Plaintiff also argues that the discrimination she faced was not "location-specific," but rather expressions of how Lambert generally viewed and would treat her. (*Id.* at 11.)

5

Notwithstanding Plaintiff's and Defendant's ties to New York, all the events which Plaintiff cites as giving rise to her claims took place in Defendant's New Jersey office: the conversation in May 2022 when Lambert told Plaintiff she had to work past 5:00 p.m. and displayed visible annoyance at her response (Compl. ¶ 12-14); the "extreme hostility" Plaintiff felt from Lambert every time she left the office at 5:00 p.m. (*id.* ¶ 16); the meeting on December 15, 2022 during which Lambert questioned Plaintiff's need to provide childcare to her daughter (*id.* ¶¶ 17-25); Lambert's assignment of a task to Plaintiff on December 21, 2022 at 4:45 p.m., knowing she had to leave at 5:00 p.m. (*id.* ¶¶ 26-28); Plaintiff's report of Lambert's conduct to Defendant's Human Resources staff (*id.* ¶¶ 37-40); and the Human Resources staff's failure to respond to Plaintiff's complaints. (*Id.*)

Plaintiff also argues in opposition to the Motion that Lambert exhibited discriminatory behavior on Zoom calls with Plaintiff while she was working from her home in New York. (*See* Dkt. 26-1, Pezzolanti Affirmation, ¶ 7.) That conduct alone does not shift the locus of operative facts to New York.

Recently, a court in this District determined that where a plaintiff who worked remotely full-time in New York for an Arizona company brought, *inter alia*, a discrimination claim pursuant to the NYSHRL due to events that occurred during a company meeting in Arizona, the "locus of operative facts" factor weighed "strongly" in favor of transfer to Arizona in part because "[e]ven if working remotely created some factual locus in this District, the fact that [plaintiff] was 'permitted to work remotely may indicate there were multiple loci of operative facts but does not shift the *principal locus* of operative facts to New York.'" *DeMaria v. Nutritional Beverages, LLC*, No. 23-CV-7314 (DLI)(JRC), 2024 WL 4145743, at *5 (E.D.N.Y. Sept. 11, 2024) (emphasis in *DeMaria*) (quoting *Schweitzer v. Nevels*, 2023 WL 2970899, at *5 (S.D.N.Y. Apr. 17, 2023)). The court concluded that since "almost all the key events occurred in Arizona," the locus of operative facts was there. *Id.* Thus, while much of Plaintiff's work may have been performed in New York, the specific events Plaintiff

6

complains of occurred exclusively in New Jersey, including Lambert's apparent participation in Zoom calls from New Jersey. (Reply at 3.) Plaintiff does not allege that events that occurred in New York gave rise to her claims. Since the key events giving rise to the claims occurred in New Jersey, the principal locus of operative facts is there even though Plaintiff was also permitted to work from New York.

The only factor weighing against transfer is Plaintiff's choice of forum. A plaintiff's choice of forum is typically "given great weight." *Gottdiener*, 462 F.3d at 107; *see also In re Warrick*, 70 F.3d 736, 741 (2d Cir. 1995) (finding a plaintiff's choice of forum is generally entitled to "substantial consideration"); *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998) (stating that a plaintiff's choice of forum should not be disturbed unless defendant shows other factors weigh strongly in favor of transfer). However, a plaintiff's choice of forum is given less weight when the operative facts of the case "have little or no connection" with the forum. *Stein v. Microelectronic Packaging, Inc.*, No. 98-CV-8952 (MBM), 1999 WL 540443, at *8 (S.D.N.Y. July 26, 1999) ("[P]laintiff's choice of forum is entitled to less deference than it would usually receive, and transfer is warranted" because the operative facts had "little or no connection" with the forum); *Donde v. Romano*, No. 9-CV-4407 (DLI)(VVP), 2010 WL 3173321, at *2 (E.D.N.Y. Aug. 10, 2010) (declining to accord great weight to plaintiff's choice of this district as the forum because "[a]ll of the conduct giving rise to [the] claim" took place in New Jersey).

Here, Plaintiff resides within the Eastern District and has chosen to bring claims in her home forum. Her choice of forum is thus "presumed to be convenient." *Bohn v. Bartels*, 620 F. Supp. 2d 418, 429 (S.D.N.Y. 2007). However, because the locus of operative facts is in New Jersey, this factor is not accorded significant weight.

Other factors merit little to no weight under the circumstances. The convenience of parties, the convenience of witnesses, the ability of process to compel the attendance of witnesses, the location

7

of documents and access to sources of proof, and the relative means of the parties are all factors of minimal relevance given, *inter alia*, technological advances, the close physical proximity of the District of New Jersey to the Eastern District of New York, and Plaintiff's failure to describe any specific hardship she would face if the case were transferred. *See, e.g.*, *Donde v. Romano*, No. 09-CV-04407 (DLI)(VVP), 2010 WL 3173321, at *2 (E.D.N.Y. Aug. 10, 2010) (finding that the convenience of the parties would not be substantially affected by a transfer from the Eastern District of New York to the District of New Jersey because "this court is quite close to the District of New Jersey's Newark courthouse. . . . In fact, courts have 'taken judicial notice of the "scant" 13–mile distance between this courthouse and the District of New Jersey's Newark district court'") (quoting *Lauer v. Saybolt LP*, No. 09-CV-3442 (ILG), 2010 WL 1992008, at *4 (E.D.N.Y. May 17, 2010)); *Blue Cross & Blue Shield of Vermont v. Teva Pharms. Indus. Ltd.*, No. 22-CV-159, 2022 WL 20668178, at *9 (D. Vt. Nov. 21, 2022) ("the COVID-19 pandemic resulted in adaptations demonstrating the feasibility of remote testimony, so [convenience of the witnesses] is arguably somewhat less important where witnesses could appear remotely instead of having to travel"); *Am. Steamship Owners Mut. Prot. & Indem. Ass'n Inc. v. LaFarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) (the location of relevant documents has become "largely a neutral factor in today's world of faxing, scanning, and emailing documents" and now weighs little in considering venue); *Jackson v. Avis Rent A Car Sys., LLC*, No. 14-CV-1658 (LLS), 2015 WL 1004299, at *3 (S.D.N.Y. Mar. 6, 2015) (where an individual plaintiff sued a corporation, despite the plaintiff's relatively limited means, "nothing in the record suggests that litigating in Philadelphia would be a hardship [for plaintiff]" and transferring the action to Philadelphia was warranted).

"Familiarity with governing law" is also not a factor weighing for or against transfer because Plaintiff brings claims, in the alternative, under both New York and New Jersey law, and "federal courts are deemed capable of applying the substantive law of other states, particularly where no

8

complex questions of foreign law are involved." *Charlot v. Ecolab, Inc.*, 12-CV-4543(KAM)(VMS), 2018 WL 11427944, at *6 (E.D.N.Y. Mar. 23, 2018).

Finally, there are no related actions in either court or other considerations that implicate "trial efficiency and interests of justice" factors. *See, e.g.*, *Williams v. City of N.Y.*, No. 03-CV-5342, 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006) (noting that "the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative").

After weighing all the relevant factors, I find that the locus of operative facts in this case is in the District of New Jersey, which weighs heavily in favor of transfer of this case to that district, and that Plaintiff's choice of forum does not outweigh this factor. All other factors merit little weight in evaluating the convenience of the parties and witnesses and the interests of justice. Given the totality of the circumstances, Defendant's motion to transfer venue is granted.

## CONCLUSION

For the reasons set forth above, Defendant's motion to transfer venue is granted.

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated: October 23, 2024
Brooklyn, New York